## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2020, 5:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| George P. Galanos | Daniel J. Zlatic |
| Crown Point, Indiana | Rubino, Ruman, Crosmer & Polen, LLC |
| | Dyer, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew Dallman, | April 30, 2020 |
| *Appellant-Respondent,* | Court of Appeals Case No. 19A-DR-2115 |
| v. | Appeal from the Lake Circuit Court |
| Eunjin Choi, | The Honorable Marissa McDermott, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 45C01-1602-DR-130 |

**Pyle, Judge.**

## Statement of the Case

[1]     Matthew Dallman ("Husband") appeals the trial court's order concluding that the decree dissolving his marriage to Eunjin Choi ("Wife") did not create a

constructive trust in favor of Husband. Finding no error, we affirm the trial court's judgment.

[2] We affirm.

# Issue

Whether the trial court's determination that the final dissolution decree did not create a constructive trust in favor of Husband is clearly erroneous.

# Facts

[3] Husband and Wife were married in July 2013 and have one child, who was born in August 2014. During the course of the parties' marriage, Wife filed a sexual harassment lawsuit against a co-worker. In December 2015, Wife entered into a confidential settlement agreement in the lawsuit. Pursuant to the terms of the agreement, Wife was awarded $40,000 in settlement proceeds. Wife received a $20,000 payment in December 2015 and used $18,000 to make a payment on student loans that she had taken out before the marriage. Wife filed a dissolution petition in February 2016 and used the remaining $2,000 from the first settlement payment to make an attorney fee deposit for the dissolution. Wife received the second $20,000 payment after she had filed the dissolution petition.

[4] In April and May 2018, Magistrate Lisa Berdine ("Magistrate Berdine"), in the court of Judge Marissa McDermott ("Judge McDermott"), presided over a six-day dissolution hearing and took the matter under advisement. In December

2018, Wife filed a praecipe requesting that the case be transferred to the Indiana Supreme Court for the appointment of a special judge pursuant to Trial Rule 53.2 because the case had been under advisement for more than ninety days. While the Indiana Supreme Court was considering Wife's praecipe, Magistrate Berdine issued a 68-page dissolution order in January 2019. Judge McDermott also signed the dissolution order.

[5] A few days later, the Indiana Supreme issued an order on Wife's praecipe. In its order, the Indiana Supreme Court noted that "[f]ailing for over seven months to render a decision in this case [was] unacceptable." (App. Vol. 2 at 49). However, pointing out that Magistrate Berdine had recently issued the dissolution order, the Indiana Supreme Court further noted that appointing a special judge would only result in further delay. The Indiana Supreme Court remanded the case to "the Lake Circuit Court and Judge McDermott." (App. Vol. 2 at 49).

[6] Although Wife had argued that the settlement proceeds from her sexual harassment settlement should not be considered as part of the marital pot, the January 2019 dissolution order provided in relevant part as follows:

> 41.     The total marital estate, minus the settlement proceeds, is Ninety Three Thousand One Hundred Fifty-Five and 36/100 Dollars ($93,155.36). [Husband's] fifty-five percent (55%) interest totals Fifty One Thousand Two Hundred[] Thirty-Five and 45/100 Dollars ($51,235.45). [Husband] has received assets totaling Eleven Thousand One Hundred Forty-Six and 98/100 Dollars (11,146.98), leaving a balance owed to [Husband] in the amount of Forty Thousand Eighty-Eight and 47/100 Dollars

($40,088.47). [Husband] shall have judgment against [Wife] for said amount. [Wife] shall pay [Husband] the amount of Nine Thousand and 00/100 Dollars ($9,000) from the settlement proceeds being held by [Wife], within seven days of the date of the Decree. . . . [Wife] shall pay the remainder to [Husband] at the rate of Five Hundred and 00/100 Dollars ($500.00) per month, until this judgment is paid in full, beginning February 1, 2019 and payable on the first of each month thereafter.

42.     [Husband] shall receive a fifty-five percent (55%) interest in [Wife's] first settlement check totaling Twenty Thousand and 00/100 Dollars ($20,000). [Wife] shall pay [Husband] his fifty-five percent (55%) interest, Eleven Thousand and 00/100 Dollars ($11,000.00), from the monies [Wife] is holding from her second settlement distribution, within seven (7) days of the date of this Decree.

(App. Vol. 2 at 118-19).

[7]     In early February 2019, Wife filed a notice of appeal in this Court. Two weeks later, she filed a voluntary Chapter 13 bankruptcy petition in the bankruptcy court and a motion to dismiss the appeal in this Court. We granted Wife's motion to dismiss the appeal with prejudice. In the bankruptcy court petition, Wife named Husband as one of many non-priority unsecured creditors. One month later, in March 2019, Wife filed a proposed Chapter 13 payment plan in the bankruptcy court.

[8]     Husband immediately filed in Wife's bankruptcy case a motion for relief from the stay and an objection to Wife's proposed plan. Husband argued that he was not a non-priority unsecured creditor because the dissolution decree had created

a constructive trust, which is not dischargeable in bankruptcy.[1] In September 2019, the bankruptcy court modified that automatic stay "to the full extent necessary for [Husband] and [Wife] to litigate on the merits . . . the discrete issue of whether the Lake Circuit Court granted [Husband] a constructive trust pursuant to same decree." (App. Vol. 2 at 35).

[9] Thereafter, Father filed a motion requesting the trial court to schedule a hearing to determine whether the dissolution decree had created a constructive trust in his favor. He also requested that Magistrate Berdine hear and decide the matter.

[10] Judge McDermott scheduled an August 2019 hearing. At the beginning of the hearing, with Judge McDermott presiding, Husband pointed out that he had asked for Magistrate Berdine to both hear and decide the matter. Judge McDermott responded that the Indiana Supreme Court had remanded the case to her and that she would be deciding it.

[11] Following a brief hearing, Judge McDermott issued an order concluding that the dissolution decree had not created a constructive trust in favor of Husband. Rather, according to Judge McDermott, the "final decree . . . [was] no different than any other divorce decree in that it decided what should be part of the

---

[1] *See In re Lucas*, 300 B.R. 526, 533 (B.A.P. 10th Cir. 2003) (explaining that property that a debtor holds in a constructive trust for another is not part of the debtor's bankruptcy estate).

marital estate and then divided that estate as the court deemed equitable."
(App. Vol. 2 at 21).

[12] Husband now appeals the trial court's order.

# Decision

[13] As a preliminary procedural matter, we note that Father contends that the trial court erroneously denied his request for Magistrate Berdine to "preside over the . . . hearing regarding the discrete issue of whether the Final Decree created the equitable remedy of a constructive trust in favor of [Husband]." (Husband's Br. 17). However, Judge McDermott explained that the Indiana Supreme Court had remanded the case to her. Notwithstanding Husband's argument that Judge McDermott misinterpreted the Indiana Supreme Court's order, that Court has previously explained that the presiding judge retains control of the proceedings although a magistrate may assist. *Williams v. State*, 724 N.E.2d 1070, 1087 (Ind. 2000), *reh'g denied, cert. denied*. Here, Judge McDermott retained control over the proceedings and had the authority to deny Husband's request that Magistrate Berdine hear and decide the case. We find no error.

[14] We now turn to the substantive issue in this case. Husband argues that the trial court erred when it determined that the final dissolution decree did not create a constructive trust in his favor. Specifically, Husband contends that "[s]ince Wife held Husband's portion of the marital estate awarded to Husband and willfully and wrongly failed to turn over and pay said portion to Husband, Wife

held said portion in a constructive trust for the benefit of Husband." (Husband's Br. at 18).

[15] Our standard of review is well-settled where, as here, the trial court sua sponte entered findings of fact and conclusions thereon. Sua sponte findings and conclusions control only as to the issues they cover, and a general judgment standard applies to any issue upon which the court has not found. *Nelson v. Marchand*, 691 N.E.2d 1264, 1267 (Ind. Ct. App. 1998). In reviewing findings and conclusions, we first determine whether the evidence supports the findings and then whether findings support the judgment. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). We will not set aside the judgment unless it is clearly erroneous. *Id.* A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Id.*

[16] "A constructive trust is a creature of equity, devised to do justice by making equitable remedies available against one who through fraud or other wrongful means acquires property of another." *Kalwitz v. Estate of Kalwitz*, 822 N.E.2d 274, 280 (Ind. Ct. App. 2005), *trans. denied*. The Indiana Supreme Court has further explained as follows:

> A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may rise because it was acquired through fraud, duress, undue influence

or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment which would result if the person having the property was permitted to retain it.

*Id.* (quoting *Melloh v. Gladis*, 261 Ind. 647, 656, 309 N.E.2d 433, 438-39 (1974) (citing 5 SCOTT ON TRUSTS § 404.2). A constructive trust is more in the nature of an equitable remedy than an independent cause of action. *Kalwitz*, 822 N.E.2d at 280. Further, the law is firmly established that fraud, either actual or constructive, is a *prerequisite* to the imposition of a constructive trust. *Id.* (Emphasis added).

[17] Here, in support of his argument that the final dissolution decree created a constructive trust in his favor, Husband directs us to *Leever v. Leever*, 919 N.E.2d 118 (Ind. Ct. App. 2009). There, Verna and Don Leever ("Parents") executed a quitclaim deed of their home to their son, Doug ("Doug"), and his wife, Lisa ("Lisa"), in 1999. Parents executed the quitclaim deed so that if Parents had to go to a nursing home, Parents "would be able to get Medicaid while, at the same time, the property would remain in the family." *Id.* at 123. Despite signing the quitclaim deed, Parents, who had lived in the house for fifty-one years, continued to pay the mortgage, utilities, homeowner's insurance, and real estate taxes. Parents also made all home maintenance decisions.

[18] In 2007, Lisa filed a dissolution petition. At the hearing on the petition, Lisa testified that it was her understanding that Parents had gifted their house to her

and Doug and that it was a marital asset. Doug testified that he considered the house to belong to his parents and that it should not be taken away from them.

[19] Following the hearing, the trial court concluded that it would be an injustice to allow Lisa or Doug to take a portion of the real estate when they had not taken a portion before their separation. Instead, the trial court ordered Doug to take the residence subject to a constructive trust in favor of his parents.

[20] Lisa appealed, and this Court pointed out that when Lisa requested the trial court to include the home in the marital estate and divide it between her and Doug, Lisa had violated her oral promise to Parents to keep the home as a safe place for them to live. *Id.* at 123. This Court further concluded that "to allow Lisa and Doug to dispossess [Parents] of their home would be to permit them to be unjustly enriched by the sale price or rents and profits accruing during the remainder of [Parents'] life, to which they are not entitled." *Id.* at 124. Accordingly, we affirmed the trial court's creation of a constructive trust to safeguard Parents' interests. *Id.*

[21] Here, we agree with Wife that Husband's reliance on *Leever* is misplaced because "[n]one of the elements in *Leever*, essential to the creation of a constructive trust, are present here." (Wife's Br. 24). First, Husband did not convey the disputed funds to Wife. Rather, Wife received the funds in a settlement of her sexual harassment claim against a party unrelated to this case. Further, Wife neither induced Husband, through a promise, to place himself in a worse position than he would have been absent such a promise, nor would be

unjustly enriched by the disputed funds because she will not be keeping them. In addition, Husband has failed to show that the funds were acquired through fraud, duress, undue influence or mistake, or through the breach of a fiduciary duty or the wrongful disposition of another's property. The trial court did not err when it determined that the dissolution decree did not create a constructive trust in favor of Husband.

[22] We further note that the trial court properly pointed out that this "final decree . . . [was] no different than any other divorce decree in that it decided what should be part of the marital estate and then divided that estate as the court deemed equitable." (App. Vol. 2 at 21). The law is well-settled that a property settlement in a dissolution decree is dischargeable in bankruptcy.[2] *Cowart v. White*, 711 N.E.2d 523, 528 (Ind. 1999), *clarified on reh'g,* 716 N.E.2d 401 (Ind. 1999) (citing 4 GOLDSTEIN ET AL., COLLIER ON BANKRUPTCY ¶ 523.11[6][c] (15th ed.1996). We find no error here.

[23] Affirmed.

May, J., and Crone, J., concur.

---

[2] On the other hand, obligations to support a former spouse or child in connection with a dissolution decree are not dischargeable in bankruptcy. *See Bean v. Bean*, 902 N.E.2d 256 (Ind. Ct. App. 2009) *(*and authority cited therein). However, Husband makes no argument that the funds that he seeks to place in a constructive trust are in the nature of support. Even if he had, this argument would fail as well since the dissolution decree clearly states that these funds were distributed as part of the marital estate.